UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER WHITE, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: |
| | ) 1:12-cv-02109-KOB |
| SUPERIOR FINANCIAL SERVICES, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the court on Defendant's "Motion to Dismiss." (Doc. 11). Plaintiffs Christopher and Misti White allege that Defendant Superior Financial Services, LLC, violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., as well as various state laws, when extending them credit through a consumer credit transaction. Defendant moves to dismiss the claims under Rule 12(b)(6), arguing that Plaintiffs have failed to state a claim under TILA and that once the TILA claim is dismissed, the court no longer has jurisdiction over the supplemental state claims. For the following reasons, the court will GRANT the motion to dismiss IN PART and DENY the motion IN PART. The court will DISMISS Count I of the complaint WITH PREJUDICE.

**I.    FACTS**

According to the Amended Complaint, on April 7, 2011, Christopher and Misti White entered into a consumer credit transaction with Superior Financial Services, LLC to obtain a loan "for personal, family or household reasons." (Doc. 10, ¶ 3). The Whites secured the $2,651.38

loan with a non-purchase money security interest in their 1999 Toyota 4 Runner. The "Mini Code Loan Note and Security Agreement" called for payment in fifteen installments, a finance charge of $689.72, and an Annual Percentage Rate of 36.48%.

The Note and Security Agreement also included a $485.09 charge for what the Whites call "Single Interest Auto Insurance"; the Note and Security Agreement itself refers to this charge as "Limited Physical Damage Insurance."[1] Regarding this Insurance charge, the Note states:

> LIMITED PHYSICAL DAMAGE INSURANCE: Borrower may obtain limited physical damage insurance from anyone Borrower wants, provided the insurance company is acceptable to the Lender. Borrower requests the Lender to obtain limited physical damage insurance and borrower will pay $485.09 for coverage.

(Doc. 10, Exhibit B). The Whites claim that they questioned the charge and showed their proof of auto property insurance to Superior's agent, but that Superior's agent contradicted the written disclosure and orally represented to them that the Insurance charge was required.

The Whites later filed for Chapter 13 bankruptcy and Security filed a secured claim for $2,381.02 under the Note and Security Agreement. Plaintiffs originally raised the issues in this suit as a permissive counterclaim in bankruptcy court on February 8, 2012, as part of their Chapter 13 bankruptcy filing. The case came to this court through a petition to withdraw reference. (Doc. 1).

Plaintiffs' complaint alleges Count I for violation of the Truth in Lending Act, Count II for violation of the *Code of Alabama*, §§ 5-19-19 and -20, and Count III for violation of the *Code of Alabama*, § 7-9A-611 and/or § 7-9A-616.

---

[1] The court will refer to the $485.09 charge simply as the "Insurance charge."

## II.     STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009).   Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678.   The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.  Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.*  If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

### III.     DISCUSSION

#### A. Count I: Truth in Lending Act

The law regarding disclosure requirements and finance charges under "Regulation Z" of TILA, found at 12 C.F.R. § 226.1 *et seq*.,  is clear and the parties do not dispute the basic application of this law. Section 226.4(b)(8) of 12 C.F.R. requires that "charges for insurance against loss of or damage to property" be included in the finance charge, unless specifically excluded by another part of § 226.4. Section 226.4(d)(2) states that "[p]remiums for insurance against loss of or damage to property . . . may be excluded from the finance charge" if certain

conditions are met, including the condition that "[t]he insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed."[2] Section 226.17(a)(1) requires that "[t]he creditor shall make the disclosures required by this subpart clearly and conspicuously in writing."

The parties agree that, on its face, the Note and Security Agreement includes an Insurance charge that initially falls under § 226.4(b)(8)—requiring it be included in the finance charge—but is then excluded by § 226.4(d)(2) because the Note and Security Agreement discloses that the Whites may obtain the insurance from "anyone Borrower wants." (Doc. 10, Exhibit B). In addition, the parties do not dispute that *if* the requirements of § 226.4(d)(2) were not met in this case, the exclusion of the $485.09 Insurance charge from the disclosed Finance Charge in this case would exceed the $10 leeway for errors given by § 226.18(d)(2).

What the parties strongly dispute is whether the Superior agent's alleged oral representation—that the Insurance charge was required despite the White's preexisting coverage—can trump the express language of the Note and Security Agreement and bring the Note and Security Agreement outside of the § 226.4(d)(2) exemption. The Whites allege that because of the oral representation, Superior violated TILA by rendering the Property Insurance disclosure unclear in violation of § 226.17(a) and by taking their "otherwise voluntary choice of property casualty insurer" from them, presumably in violation of § 226.4(d)(2).

---

[2] Defendant asserts that "Plaintiffs incorrectly or mistakenly have referred to the insurance at issue as Single Interest Auto Insurance, and as a result may intend to refer to 12 C.F.R. § 226.4(d)(1) . . . ." (Doc. 11, n. 6). Plaintiffs' complaint never actually refers to a specific subsection of § 226.4(d) (doc. 10), and Plaintiffs' response to the motion to dismiss does not dispute Defendant's assertion that § 226.4(d)(2) is the applicable law (doc. 13). Therefore, regardless of what name the parties use for the Insurance charge, the court finds that § 226.4(b)(2) applies.

The parties discuss three main cases that interpret Regulation Z on this matter.[3] The court will address these three cases, plus one other, in determining whether Plaintiffs have stated a claim upon which relief can be granted.

In *Anthony v. Community Loan & Investment Corp.*, 559 F.2d 1363 (5th Cir. 1977), the former Fifth Circuit addressed a dispute over whether the description of a security interest in a security agreement was sufficient to meet the requirements of 12 C.F.R. § 226.8(b).[4] Noting that the face of the security agreement met the disclosure requirements of Regulation Z, the court stated:

> Although plaintiff asserts that she never requested or desired insurance coverage, but merely signed the documents when told to do so, this assertion is insufficient to vary the terms of the contract or to negate the creditor's full compliance with the disclosure requirements of Regulation Z. The defendant correctly contends that, absent a claim of illiteracy, fraud or duress, no extraneous oral evidence can be presented by the plaintiff to prove that the defendant gave her the impression that the insurance was required.

*Anthony*, 559 F.2d at 1368. The Court continued by endorsing an FTC informal staff opinion that asserted that a TILA written disclosure statement "is a protection against oral misrepresentations that induce a loan. Consumers must learn to inspect disclosure statements before signing a

---

[3]Plaintiffs also cite a fourth case, *In re Milbourne*, 108 B.R. 522 (E.D. Penn. 1989). Plaintiffs assert that "[t]here are other cases around the nation dealing with the admissibility of a Lender's oral statement contradicting and thus clouding the clarity of written disclosures. These are well set out in the case of *In re Milbourne* . . . ." (Doc. 13, at 3). Plaintiffs do not actually discuss or even cite these "other cases around the nation" and fail to provide a pinpoint cite within the fairly lengthy *Milbourne* case to direct the court to the allegedly relevant cases. Despite Plaintiffs' failure to adequately develop its argument regarding this case, the court has reviewed *In re Milbourne* and has determined that it is ultimately not helpful to the decision in this case.

[4]After the Fifth Circuit split, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

contract, otherwise the purpose of the Act and Regulation Z will be frustrated." *Id*. at 1369-70 (quoting FTC Informal Staff Opinion of Dec. 9, 1969, (1969-1974 Transfer Binder), CCH CONS.CRED.GUIDE P 30, 309).

Likewise, in *USLIFE Credit Corp. v. F.T.C.*, the former Fifth Circuit reiterated its findings in *Anthony* and held that although "there may be exceptions in the case of illiteracy, fraud or duress . . . literal, technical compliance with the regulation is all that is required." 599 F.2d 1387, 1390 (5th Cir. 1979).[5] In *USLIFE*, the Court addressed a situation where the Federal Trade Commission had already found the defendant in violation of Regulation Z based on the defendant's oral representations to the plaintiff regarding insurance charges. In determining that these oral representations could not be considered where both parties acknowledged that "the credit corporation complied technically with Regulation Z," the Court concluded that "[t]he idea that disclosure requirements should be broadened to provide more meaningful information to borrowers than is now required is a matter for the consideration of Congress." *Id*.

In the years since the *Anthony* and *USLIFE* decisions, two district courts within this circuit have addressed similar Regulation Z issues. In *Dixon v. S & S Loan Service of Waycross, Inc.*, 754 F. Supp. 1567 (S.D. Ga. 1990), the Southern District of Georgia faced the same issue before the court here—whether the defendant violated TILA by failing to include insurance premiums as an element of the finance charge. Specifically, the plaintiffs in *Dixon* claimed that they had offered their existing car insurance policy to serve as single interest insurance on the car that was serving as collateral for the loan. The court refused to even consider whether this

---

[5]After the Fifth Circuit split, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

exchange actually occurred, calling it "immaterial" and citing both *Anthony* and *USLIFE* for the proposition that "a borrower may not introduce contemporaneous evidence to contradict the express terms of the loan agreement." *Id*. at 1571.

In *Douglas v. Foundation Funding Group, Inc.*, No. 1:03-CV-2538-CC, 2005 WL 6466538 (N.D. Ga. Jan. 6, 2005), the Northern District of Georgia reached a somewhat different conclusion, one that the Plaintiffs in this case argue supports a more limited reading of *Anthony* and *USLIFE*. In *Douglas*, the court considered extrinsic evidence in deciding whether a plaintiff had acted to rescind a credit transaction within the allowable time period, holding that "a borrower may present evidence to contest the actual delivery of a TILA disclosure." *Id*. at *8. The court in *Douglas* did, however, specifically limit its holding, noting that "[u]nlike the scenario presented in *Dixon*, however, Plaintiff does not seek to present contemporaneous evidence seeking to alter any express *term* of a contract." *Id*. (emphasis in original).

Applying the law from these cases to the facts from the complaint viewed in the light most favorable to the Plaintiffs, the court finds that the rule from *Anthony* and *USLIFE*—that Regulation Z only requires literal, technical compliance and that extraneous evidence is only allowed in the case of illiteracy, fraud, or duress—requires the dismissal of Count I of the case at hand. *Anthony* and *USLIFE* still serve as the binding precedent on this issue, and even if the court followed the example of the court in *Douglas*, the outcome would not change. Even the court in *Douglas* limited the consideration of extrinsic evidence to issues outside of the express terms of a contract. The disclosure of the Insurance charge in this case is an express term of the contract; therefore, even under a more limited view of the rule, the Note and Security Agreement complied with Regulation Z.

Furthermore, although Plaintiffs' briefs continually reference the "lies" told by Defendant's agent, the complaint itself does not allege any type of fraud, but merely a TILA violation. As such, the court finds that Plaintiffs have failed to state a claim under TILA and Count I of their complaint is due to be DISMISSED WITH PREJUDICE.

### B. Counts II and III

The remaining two counts of Plaintiffs' complaint are brought under state law and are in this court pursuant to its supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a). Defendants argue that upon the dismissal of the TILA claim, "this Court lacks subject matter jurisdiction to hear the remaining two state law claims." (Doc. 11, at 7). Defendants are wrong. Although federal courts generally prefer that state courts be the final arbiters of state law, and they often dismiss supplemental state law claims without prejudice once the federal claims have been dismissed, the decision whether to dismiss the supplemental claims is *within the discretion* of the court. *See* 28 U.S.C. § 1367(c) ("The district court *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if– . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . .") (emphasis added); *see also Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

In exercising its discretion, "[i]f the state claim has become time-barred during the pendency of the federal action then the court should exercise supplemental jurisdiction despite the dismissal of all of the federal claims." *Ingram v. Sch. Bd. of Miami-Dade County*, 167 F. App'x 107, 109 (11th Cir. 2006) (citing *Eubanks v. Gerwen*, 40 F.3d 1157, 1162 (11th Cir. 1994)). In this case, Plaintiffs' claim under Alabama Code § 5-19-19 would be barred under the one-year statute of limitations found within the section because over a year has passed since

August 2012, the very latest time when the statute could have begin to run.[6] ALA. CODE § 5-19-19(a)(2) ("No action under this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made or, in the case of an open-end credit plan, one year after the excess charge is made."). Because at least one of Plaintiffs' claims would be barred by the statute of limitations if subsequently brought in state court, the court will retain jurisdiction over Counts II and III and will DENY Defendant's motion to dismiss as to these claims.

IV.     **CONCLUSION**

For the reasons stated above, the court finds that the Defendant's "Motion to Dismiss" is due to be GRANTED IN PART and DENIED IN PART. The court will DISMISS WITH PREJUDICE Count I of Plaintiffs' complaint. The court simultaneously will enter a separate Order to that effect.

DONE and ORDERED this 12th day of March, 2014.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

---

[6]The court arrives at the August 2012 date by adding 15 months—the period of the loan—to the May 2011 date of the first payment. (Doc. 10, Exhibit B). Although the statute of limitations would likely have begun to run before this time because the Whites entered bankruptcy at some point in 2011, the August 2012 date, as the "date of the last scheduled payment," is the *very latest* it could have begun to run. *See* Ala. Code § 5-19-19(a)(2).